UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEBORAH CLARK,

    Plaintiff,

v.

PATRICK R. DONAHOE,
Postmaster General, USPS,

    Defendant.

Case No. 2:11-CV-597
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE NORAH McCANN KING

## OPINION & ORDER

This matter is before the Court on Defendant Patrick R. Donahoe's Motion for Partial Dismissal of Plaintiff's Complaint (Doc. 3). For the reasons that follow, Defendant's motion is **DENIED**.

### I. BACKGROUND

Plaintiff Deborah Clark ("Clark") brings this action against Patrick R. Donahoe, Postmaster General of the United States Postal Service ("USPS"), asserting sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*.

Clark, who is employed at the Cadiz, Ohio USPS facility as a postal clerk, alleges that from June 2005 through April 2009 she was subjected to a hostile work environment based on her sex. (Compl. ¶¶ 5–7.) According to Clark, a co-worker, John Carrel ("Carrel"), was responsible for the majority of the antagonistic acts that created a hostile work environment at the Cadiz post office. (*Id.* ¶ 4.) Clark alleges that Carrel vandalized Clark's truck on several occasions from December 2007 through July 2008 by scratching the sides of the vehicle with a

key and hitting it with his door as he exited his own truck. (*Id.* ¶ 6.) Carrel also reportedly called Clark an "asshole" in February 2008, and has since refused to call her by her actual name. (*Id.* ¶ 4.)

In June 2008, Clark claims that Carrel stole $100 from her cash register drawer, with the intent of "set[ting] her up for an accusation of employee theft." (*Id.* ¶¶ 4–5.) Later that month, Clark attempted to submit a request to obtain a flag from the United States Department of Veterans Affairs, but Carrel refused to turn in the forms that she had prepared—despite the fact that he had assisted male employees at the Cadiz post office in processing their flag requests. (*Id.* ¶ 5.) The final instance of hostility involving Carrel reported by Clark in her Complaint allegedly occurred on April 6, 2009. (*Id.* ¶ 6.) Clark claims that Carrel physically assaulted her by slamming an office drawer into her lower leg—the leg upon which Clark had surgery in August 2008. (*Id.*)

In addition to allegedly facing hostile treatment from Carrel, Clark also contends that Robert Cline ("Cline"), her supervisor and the postmaster at the Cadiz post office, was aware of and tolerated the offensive behavior of Carrel and other male employees. (*Id.* ¶¶ 9–10, 12.) Clark claims that since 2005, the male workers at the Cadiz post office regularly made sexually inappropriate comments about female "breasts, bottoms and body weight." (*Id.* ¶ 7.) According to Clark, binoculars are kept on the premises at the Cadiz post office so that male employees "can look at females coming and going from the facility." (*Id.* ¶ 8.) In addition, Clark asserts that many of her male co-workers refuse to speak to her because she is a woman, thereby creating "a hostile work environment based upon sex" because employees "must communicate with each other to function as a team" in order to effectively perform their daily duties. (*Id.* ¶ 9.)

2

On several occasions throughout the four-year period that both the hostility from Carrel and the offensive behavior of other male employees were occurring, Clark claims that she informed Cline about the work environment, but that Cline ignored her complaints. (*Id.*) According to Clark, neither Carrel's hostility nor the sexually inappropriate behavior of her male colleagues abated. (*Id.*) Clark further alleges that none of the employees at the Cadiz post office—including Carrel—have been investigated or disciplined by Cline or any other supervisor as required by Title VII. (*Id.* ¶¶ 9–10.)

Additional factual allegations can be drawn from documents attached to the motion to dismiss and matters of public record. On August 7, 2008, Clark had knee surgery due to a non-work-related injury and was placed on medical leave for four months. (Def.'s Mot. ¶ 8.) She returned to work on December 9, 2008, after trying unsuccessfully to return to work earlier. (*Id.*) On the following day, December 10, 2008, Clark contacted an Equal Employment Opportunity ("EEO") counselor. (*Id.* ¶ 9.) Clark voiced two complaints to the EEO counselor. (*Id.* ¶¶ 8–9.) First, Clark told the counselor that she had been subjected to harassment by Carrel since 2005. (*Id.*, Ex. 1, EEO Investigative Affidavit ("EEO Inv. Aff.") at 3–10.) Clark also complained that Cline had permitted several of her male co-workers to return to work with restrictions after they took medical leave without imposing the preconditions and forcing them to suffer the delays that she experienced after her August 2008 knee surgery. (EEO Inv. Aff. at 10–14.)

The factual allegations supporting Clark's claim that she faced unreasonable delays in being brought back to work after her surgery (the "Delayed Call-Back") are not set forth in Clark's Complaint, but instead are detailed in both the EEO Investigative Affidavit and in the Partial Decision Without Hearing ("EEO Decision") issued by Administrative Law Judge ("ALJ") Debra L. Sharp in the proceeding before the Equal Employment Opportunity

3

Commission ("EEOC"). The EEO Decision was not attached to the Complaint as an exhibit, but was instead appended to Clark's Opposition to Defendant's Motion for Partial Dismissal ("Opposing Memorandum") as Exhibit 1 ("Opp. Memo"). In the EEOC proceeding, the ALJ ultimately rejected Clark's contention that the Delayed Call-Back was based on disparate treatment, concluding that the USPS had demonstrated "a legitimate and non-discriminatory reason for the Agency's actions toward the Complainant regarding her return to work." (Opp. Memo at 10.)

The factual allegations upon which Clark's Delayed Call-Back claim is predicated are as follows:

(1) Clark consulted with her orthopedic surgeon, Dr. Hellerman ("Hellerman"), who reported that she could return to work on October 4, 2008, but that she would be restricted to lifting a maximum of twenty pounds until December 5, 2008. (EEO Decision at 3);

(2) Two days before she was scheduled to return to work, Cline informed Clark that she could not return to work with her current work restrictions. (*Id.*);

(3) Upon hearing this, Clark contacted Hellerman and asked him to lift the restrictions. Hellerman acceded to Clark's request to lift the work restrictions, and informed Cline via fax that he had done so. (*Id.*) Clark also told Cline that if she were injured on the job because of the lack of work restrictions, she would contact the union and ensure that the Post Office would pay for her injury. (*Id.* at 4);

(4) Because Cline had received conflicting instructions from Hellerman within such a short time period, he contacted the post office's medical unit and Labor Relations department. (*Id.*) The medical unit and Labor Relations department decided that Clark should be subjected to further medical testing before being permitted to return to work. (*Id.*);

(5) After a return-to-work examination was performed by a physician approved by the post office ("Examining Physician"), it was determined that the work restrictions recommended by Hellerman should remain in place. (*Id.*) According to the Examining Physician's report, because he had only examined Clark once, he was unable to state with medical certainty when the work restrictions should be lifted. (*Id.*);

4

(6) After receiving the results of the examination, Clark filed a request for temporary light duty, but it was rejected because she failed to include beginning and end dates in the request and also because she had provided her employer with inconsistent medical documentation. (*Id.*);

(7) Cline advised Clark that her request for light duty would be considered when she produced detailed medical records—including x-rays, a copy of the surgical report from her injury, and a statement from Hellerman specifying the date she could return to work without restrictions. (*Id.* at 4–5);

(8) Instead of meeting with Hellerman, Clark consulted with her family physician, Dr. Kindra Browning ("Browning"). (*Id.* at 5.) Browning reported that Clark could return to work immediately, without restrictions. (*Id.*) Browning's report also suggested that the Examining Physician had imposed restrictions upon Clark different than those previously imposed by Hellerman—which would have allowed Clark to return to work without restrictions immediately. (*Id.* at 3–4);

(9) Due to the confusion caused by the receipt of conflicting reports from multiple examining physicians, the Post Office's medical unit sent Clark a letter requesting further information from her surgeon, Hellerman. (*Id.* at 4);

(10) Hellerman complied with this request, sending a letter indicating that Clark still should not lift more than twenty pounds, and that she could return to work without restrictions on December 8, 2008. (*Id.* at 5);

(11) Clark was then scheduled by the Cadiz post office to return to work on December 9, 2008. (*Id.* at 6.)

Clark alleges that as a result of Carrel's treatment and Cline's failure to address it, Clark: (1) has experienced multiple health problems (Compl. ¶ 11); (2) was apprehensive about going to work, leading her to seek psychiatric treatment and take medication for anxiety (*Id.*, EEO Decision at 5); (3) suffers from gastrointestinal issues and high blood pressure; and (4) has experienced weight gain. (EEO Decision at 6, 13.)

Clark filed suit in this Court on July 8, 2011 alleging sex discrimination and retaliation in violation of Title VII, seeking compensatory and punitive damages, attorneys' fees and costs, and an equitable cease and desist order. (Compl. ¶ 12.) Defendant now moves for partial

5

dismissal of Clark's Complaint under Federal Rule of Civil Procedure 12(b)(6), contending that any incidents prior to August 2008 relating to Clark's hostile work environment claim should be dismissed because she failed to exhaust her administrative remedies.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of a claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard articulated in *Twombly*). This factual content may be stated directly in the complaint, or may be inferred from other information. *See Hunter v. Secy. of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009).

When ruling on a motion to dismiss, the court primarily considers the allegations in the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). However, matters of public record of which the court may take judicial notice—such as orders, administrative decisions, items appearing in the record of the case, and exhibits attached to the complaint—may also be taken into account. *Id.*; *see also Legacy Commercial Flooring Ltd. v. United Am. Healthcare Corp.*, No. 2:10-cv-486, 2011 WL 1233360, at *2 (S.D. Ohio Mar. 28, 2011). Documents that a defendant attaches to a motion to dismiss may also be considered if the plaintiff's claims are based on those documents. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89

(6th Cir. 1997). However, documents outside the pleadings should be considered by the court only to "fill [] in the contours and details of the plaintiff's complaint," not as a basis for the court's decision. *Hogan v. Kokosing Constr. Co.*, No. 2:08-cv-01052, 2009 WL 3124317, at *2 (S.D. Ohio Sept. 29, 2009).

## III. DISCUSSION

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex or national origin. 42 U.S.C. § 2000e. Title VII is meant to provide the "exclusive judicial remedy" for claims of discrimination in federal employment. *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)). In allowing federal employees to sue under Title VII, Congress conditioned the government's waiver of its sovereign immunity upon a plaintiff's fulfillment of "rigorous administrative exhaustion requirements and time limitations" before filing civil suit. *Steiner*, 354 F.3d at 434–35 (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 1961)). The EEOC, which was created by Congress under Title VII, is responsible for the enforcement of these administrative requirements and time limits. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104 (2002).

The administrative requirements that must be exhausted before filing a complaint in federal court are contained in Part 1614 of the Code of Federal Regulations ("C.F.R."). Federal employees bringing discrimination claims under Title VII must follow the mandatory five-step process of filing a complaint with the EEOC. 29 C.F.R. § 1614.105–110 (2012).

At issue in this case is the first step of the process, which requires an aggrieved federal employee to contact an EEO counselor within 45 days of an allegedly discriminatory matter. 29 C.F.R. § 1614.105. Defendant contends that any incidents prior to August 2008 relating to

7

Clark's hostile work environment claim should be dismissed because she failed to exhaust her administrative remedies before filing her claim in this Court. The Court, however, finds otherwise for two reasons: (1) Clark exhausted her administrative remedies under Title VII's "continuing violation" theory; and (2) the Delayed Call-Back can be considered one of the constituent acts of the alleged hostile work environment.

### A. "Continuing Violation" Theory

Discrimination claims under Title VII can be based on either "discrete acts" or on a "continuing violation." *Morgan*, 536 U.S. at 110. Discrete acts are isolated incidents that "occur" on a particular day, while continuing violations involve repeated conduct, and thus the unlawful employment practice cannot be said to take place on a specific day. *Id.* at 115 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Where a continuing violation is alleged, the unlawful practice may occur over days, months, or even years. *Id.*

A "hostile work environment" claim is a specific type of continuing violation. *Morgan*, 536 U.S. at 116. An individual has a hostile work environment claim under Title VII when "the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quotation marks and internal citations omitted). If a court finds that a hostile work environment exists, the discriminating party may be held liable for component acts of that environment that fall outside the 45-day statutory filing period. *Id.* at 117. When determining liability, in order for the court to consider the entire time period in which the hostile work environment is alleged to exist, only one act contributing to the claim must fall within the 45-day period. *Id.* The remaining acts may fall outside the time limit. *Id.*

8

Defendant contends that it is impossible for Clark to have the one timely event needed for her hostile work environment claim to qualify as a continuing violation, given that she was on medical leave for four months before she contacted an EEO counselor. The Court disagrees, however, for two reasons. First, Defendant fails to cite any case law supporting the highly technical proposition that a gap in employment automatically defeats a hostile work environment claim. In fact, courts have found the opposite to be true. *See Richards v. Dept. of the Army*, No. 05-1091, 2007 WL 579549, at *3 (6th Cir. Feb. 15, 2007) (holding that a hostile work environment claim is valid even when the victim of that environment is absent from the workplace for an extended period of time); *Greer v. Paulson*, 505 F.3d 1306, 1314 (D.C. Cir. 2007) (rejecting a *per se* rule against considering incidents allegedly occurring while an employee was physically absent from the workplace); *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (recognizing that sexual harassment can be a continuing violation even when the employee is not working).

Second, Defendant overlooks the standard that, in deciding a motion pursuant to Rule 12(b)(6), a court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 WL 993882, at *4 (6th Cir. Oct. 19, 1999). Clark alleges in her Complaint that the male employees at the Cadiz post office have made sexually offensive comments about female body parts since 2005, and that binoculars are kept on the premises to observe women coming and going from the facility. (Compl. ¶¶ 1, 8.) She also alleges that Carrel has called her an "asshole" during the course and scope of her employment rather than her given name, and that Carrel and other male co-workers often subject Clark to the silent treatment "because she is a woman." (*Id.* ¶¶ 4, 9.)

9

Applying the liberal standard above, the Court concludes, according to the Complaint, the alleged behavior was still occurring when Clark returned from medical leave on December 9, 2008—i.e., the hostile work environment Clark left in August 2008 was still in existence when she returned to work in December 2008. *See Jensen v. Henderson*, 315 F.3d 854, 861–62 (8th Cir. 2002) (holding that a hostile work environment can be a continuing violation even though the employee is not working where employee has received "no indication that the environment of harassment has changed").

The existence of an ongoing hostile work environment is supported by Clark's allegation that she was subjected to an assault by Carrel in April 2009. (Compl. ¶ 6.) Thus, several months after she contacted an EEO counselor, according to the Complaint, the hostile work environment continued. Because this hostile work environment was ongoing, Clark's contact with an EEO counselor on December 10, 2008—the day after she returned to work—was timely.

## B. Delayed Call-Back as Constituent Act

Even assuming that Carrel's hostility toward Clark, the ongoing discussion of female bodies, and the use of binoculars to observe women at the Cadiz post office were not sufficient to constitute a continuing violation of Title VII, Defendant's argument that Clark failed to exhaust her administrative remedies is still unpersuasive. Without the aid of the continuing violation theory, Clark's return to work on December 9, 2008 (the Delayed Call-Back) can be considered one of the constituent acts of the alleged hostile work environment. Because Clark contacted an EEO counselor only one day after the Delayed Call-Back (December 10, 2008), this contact was well within the 45-day time limit.

The Defendant attempts to isolate the Delayed Call-Back from Clark's hostile work environment claim. In *Morgan*, however, the Supreme Court held that Title VII "does not

10

separate individual acts that are part of the hostile [work] environment claim from the whole for purposes of timely filing and liability." *Morgan*, 536 U.S. at 118. Defendant treats the Delayed Call-Back as a separate claim. However, the Sixth Circuit has held that not all of the events in a hostile work environment need to be identical to be considered part of that environment. *Richards*, 2007 WL 579549, at *3.

While the Defendant does not raise the issue in its motion, the Court notes that Clark's claim regarding the delay in her return to work is not directly and clearly pleaded in her Complaint. Only a passing mention of the Defendant's "retaliation [against Clark] for making complaints about discrimination" can be found in the Complaint (Compl. ¶ 12), likely referring to Clark's claim that she suffered discrimination on the basis of sex for not being brought back to work sooner. (Opp. Memo at 2–3.) Additionally, Clark does not plead that she exhausted her administrative requirements in the Complaint.[1] She also fails to include the information that would support her argument that she was in compliance with these requirements: the date she returned to work and the date that she contacted an EEO counselor.

In spite of this, the Court may still consider Clark's hostile work environment claim. While Clark's claim that the Delayed Call-Back was discriminatory is not direct or explicit, it is sufficiently clear as an allegation in the Complaint. In her Complaint, Clark asserts that she was subjected to "retaliation for making complaints about discrimination or participating in investigative activity." (Compl. ¶ 12.) A fair reading of the Complaint in Clark's favor is that the retaliation she suffered was the Delayed Call-Back, which was punishment for the complaints

---

[1] Clark's failure to plead exhaustion of her administrative remedies is not necessarily detrimental to her claim. While the Sixth Circuit has upheld the dismissal without prejudice of a plaintiff's disability claim when she failed to allege exhaustion of administrative remedies in her complaint, *Brewer v. Cleveland Mun. Sch. Dist.*, 84 F. App'x 570, 572 (6th Cir. 2011), typically the failure to exhaust administrative remedies in a timely manner is an affirmative defense which a defendant has the burden of pleading and proving. *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (citing *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)). Here, however, the Defendant does not raise in its motion the argument that Clark failed to plead exhaustion of her administrative remedies.

11

she made to Cline as to the poor treatment she allegedly received from Carrel. The Defendant has also responded to this reading of the Complaint.

Clark's return to work on December 9, 2008—after a delay that she perceived to be motivated by sex discrimination—caused her to contact an EEO counselor. Because this allegedly discriminatory delay in her return to work occurred only one day before Clark's contact with an EEO counselor—well within the 45-day limit—this can be considered the one timely event in Clark's hostile work environment claim. This one timely claim will allow the entire June 2005 through April 2009 period to be examined in determining the validity of Clark's claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Clark has fulfilled her administrative exhaustion requirements. Accordingly, the Defendant's Motion for Partial Dismissal of Plaintiff's Complaint (Doc. 3) is **DENIED**.

**IT IS SO ORDERED.**

8-6-2012
DATED

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE